# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AUSTIN I. STONE, an individual person,<br><br>Appellant,<br><br>v.<br><br>KING COUNTY, a political subdivision of the State of Washington; and GEORGE EPPLER, a KING COUNTY EMPLOYEE who is an individual person,<br><br>Respondents. | No. 88714-9-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

FELDMAN, J. — Austin Stone appeals the trial court's order dismissing his legal malpractice and breach of fiduciary duty claims against his former criminal defense attorney, George Eppler, on causation grounds under CR 12(b)(6). In the underlying proceeding in which Eppler represented Stone, the court (referred to herein as the sentencing court) erroneously imposed a sentence of *supervised* probation. Stone alleges that Eppler had and breached a duty to ensure that the sentencing court imposed a sentence of *unsupervised* probation in accordance with the parties' joint recommendation and the sentencing court's stated intent. The trial court below concluded that the sentencing court's error is a superseding cause and therefore severs the causal connection between Eppler's breach and

Stone's injury.[1]  Because the trial court erred in applying the controlling legal principles regarding intervening acts and superseding cause to the alleged and properly hypothesized facts, we reverse the court's dismissal of these claims and remand the matter for further proceedings consistent with this opinion.

I

Stone assigns error to the trial court's dismissal of his claims under CR 12(b)(6).  Accordingly, the following statement of facts accepts as true the allegations contained in his complaint.  *See Tang Real Estate Invs., Corp. v. Escrow Servs. of Wash.,* 30 Wn. App. 2d 602, 604, 546 P.3d 453 (2024).

Stone alleges that, in early 2022, he "was being prosecuted by the State of Washington" and Eppler was his "attorney-in-fact to defend against the criminal allegations."  During the representation, Eppler "reached a plea agreement with the State of Washington on behalf of" Stone, which "involved unsupervised probation."  Stone further alleges that the matter proceeded to a judgment and sentence hearing on May 27, 2022, at which "the judge, the prosecutor, MR. EPPLER, and MR. STONE all had the same understanding:  MR. STONE was to be placed on *unsupervised* probation."  Further, "[t]he oral ruling of the judge . . . confirmed the unsupervised probation of MR. STONE."

---

[1] Because the sole issue on appeal is causation, we assume without deciding that Stone has established the remaining elements of his claims, including breach and injury.  Stone also asserted a negligent training claim against Eppler's employer, King County.  The trial court concluded that this claim is subsumed by Stone's remaining claims under *LaPlant v. Snohomish County*, 162 Wn. App. 476, 271 P.3d 254 (2011), because Stone did not dispute that Eppler was acting in the course and scope of his employment at the time of the tortious conduct.  Stone expressly concedes this point on appeal and does not assign error to this portion of the trial court's ruling, so we need not— and do not—discuss this claim further.

Notwithstanding this shared understanding, Stone's complaint alleges that the written judgment and sentence, which the parties provided to the sentencing court at the hearing and the court accepted, "was erroneous and did not match the oral ruling that was issued." Instead of *unsupervised* probation, the judgment and sentence imposed a 12-month term of probation *supervised* by the Washington State Department of Corrections (DOC). Following this hearing, Stone did not contact DOC before leaving Washington because he believed the judgment and sentence had specified unsupervised probation. When he later returned to Washington, he was arrested and "subjected to solitary confinement" and "electronic home monitoring in the State of Washington" because he had failed to report to DOC for his supervised probation. Stone succeeded in obtaining a corrected judgment and sentence.

Stone thereafter filed a complaint and amended complaint against Eppler asserting claims for legal malpractice and breach of fiduciary duty. Both claims allege that Eppler had and breached a duty to Stone to "use due care" when reviewing the "Judgment and Sentence paperwork" and "to ensure the Judgment and Sentence paperwork was an accurate reflection of the Judicial Officer's oral rulings." Eppler filed a motion to dismiss the claims under CR 12(b)(6). He argued that "[b]ecause the judge was presented with all material information . . . the judge's order . . . was an intervening, superseding cause for any alleged error by Eppler." The trial court granted Eppler's motion and dismissed Stone's claims with prejudice. This timely appeal followed.

II

Stone argues the trial court erred in dismissing his legal malpractice and breach of fiduciary duty claims on causation grounds under CR 12(b)(6). We agree.

A

This court reviews a trial court's order granting a motion to dismiss under CR 12(b)(6) de novo. *Wahkiakum Sch. Dist. No. 200 v. State*, 2 Wn.3d 63, 77, 534 P.3d 808 (2023). Dismissal under CR 12(b)(6) is appropriate if "'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'" *Bowman v. John Doe Two*, 104 Wn.2d 181, 183, 704 P.2d 140 (1985) (quoting *Orwick v. Seattle*, 103 Wn.2d 249, 254, 692 P.2d 793 (1984)). "We presume the facts in the complaint are true and reject the motion to dismiss if '[a]ny hypothetical situation conceivably raised by the complaint . . . is legally sufficient to support the plaintiff's claim.'" *Tavaglione v. Dehkhoda & Qadri, P.C.*, 34 Wn. App. 2d 515, 520, 568 P.3d 1158 (2025) (quoting *Jackson v. Quality Loan Serv. Corp. of Wash.*, 186 Wn. App. 838, 843, 347 P.3d 487 (2015)). "Documents whose contents are alleged in a complaint but which are not physically attached to the pleading may also be considered in ruling on a CR 12(b)(6) motion to dismiss." *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 726, 189 P.3d 168 (2008).

"In a tort action against attorneys that alleges legal malpractice and breach of a fiduciary duty of loyalty during the representation, the plaintiff must allege and identify the source of the duty, that a breach occurred resulting in injury, and that

the breach proximately caused the injury." *Arden v. Forsberg & Umlauf, P.S.*, 189 Wn.2d 315, 323, 402 P.3d 245 (2017). Broadly stated, "[a]n act generally is a proximate cause of an injury if it produces the injury." *Roemmich v. 3M Company*, 21 Wn. App. 2d 939, 952, 509 P.3d 306 (2022). Here, however, Eppler alleges, and the trial court ruled, that the sentencing court's error is a superseding cause and therefore severs the causal connection between Eppler's tortious conduct and Stone's injury.

In *Roemmich*, we set forth the legal principles that govern the superseding cause analysis as follows:

> [W]hen a new, independent act breaks the chain of causation, it supersedes the original act as the proximate cause of the injury. [*Crowe v. Gaston*, 134 Wn.2d 509, 519, 951 P.2d 1118 (1998)]. The Restatement of Torts defines "superseding cause" as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." RESTATEMENT (SECOND) OF TORTS § 440 (AM. LAW INST. 1965).
>
> In determining whether an intervening act constitutes a superseding cause we consider "whether (1) the intervening act created a *different type of harm* than otherwise would have resulted from the actor's negligence; (2) the intervening act was *extraordinary* or resulted in extraordinary consequences; [and] (3) the intervening act operated *independently* of any situation created by the actor's negligence." *Campbell v. ITE Imperial Corp.*, 107 Wash.2d 807, 812-13, 733 P.2d 969 (1987) (citing RESTATEMENT § 442). The act has to be "'so highly extraordinary or unexpected that [it] can be said to fall [out of] the realm of reasonable foreseeability as a matter of law,'" and "'[i]f the acts . . . are within the ambit of the hazards covered by the duty imposed upon the defendant, they are foreseeable and do not supersede the defendant's negligence.'" *Cramer v. Dep't of Highways*, 73 Wash. App. 516, 521, 870 P.2d 999 (1994) (some alterations in original) (internal quotation marks omitted) (quoting *Brashear v. Puget Sound Power & Light Co.*, 33 Wash. App. 63, 69, 651 P.2d 770 (1982), rev'd on other grounds, 100 Wash.2d 204, 667 P.2d 78 (1983)). Thus, "'only intervening acts which are not reasonably foreseeable are deemed superseding causes.'" *State v.*

>*Frahm*, 193 Wash.2d 590, 600, 444 P.3d 595 (2019) (internal quotation marks omitted) (quoting *Crowe*, 134 Wash.2d at 519, 951 P.2d 1118).

*Id.* at 952-53. We further noted, "Whether a third party's intervening act rises to the level of a superseding cause is generally a question of fact for the jury, but it may be determined as a matter of law if reasonable minds could not differ as to the foreseeability of the act." *Id.* at 953.

Washington also has adopted various provisions of the Third Restatement of Torts (*see, e.g., Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587, 608, 257 P.3d 532 (2011); *Martinez v. Washington State Univ.*, 33 Wn. App. 2d 431, 473, 562 P.3d 802, review granted, 4 Wn.3d 1032, 570 P.3d 714 (2025)), which also speaks to this issue. Relevant here, section 34 of the Third Restatement, entitled "Intervening Acts and Superseding Causes," provides as follows: "When a force of nature or an independent act is also a factual cause of harm, an actor's liability is limited to those harms that result from the risks that made the actor's conduct tortious." RESTATEMENT (THIRD) OF TORTS § 34 (AM. LAW INST. 2010). Comment a to section 34 explains that the section recognizes "that there are always multiple causes of an outcome and that the existence of intervening causes does not ordinarily elide a prior actor's liability." *Id.* at cmt. a.

Our Supreme Court addressed these issues in a case involving an intervening judicial decision in *Tyner v. Department of Social and Health Services,* 141 Wn.2d 68, 1 P.3d 1148 (2000). There, a Department of Social and Health Services (DSHS) caseworker investigated whether Tyner had abused his children and signed a declaration recommending that the children have no contact with

Tyner pending completion of the investigation. *Id.* at 73. That same day, the superior court granted an ex parte temporary order of protection, which prohibited all contact between Tyner and his children. *Id.* The caseworker then filed a dependency petition. *Id.* Following a hearing, the court entered an order prohibiting all contact between Tyner and his children. *Id.* The caseworker then completed his investigation and changed his final report to state that the allegations of abuse were "unfounded." *Id.* at 74. But the caseworker did not provide the final report or its contents to the court. *Id.* Eventually, the court dismissed the dependency petition on the State's motion, finding that Tyner "had cooperated with court-ordered services and had agreed to a future course of conduct, and that dismissal was in the best interests of the children." *Id.* at 75.

Tyner sued the State and other actors involved in his separation from his children and asserted a claim for negligent investigation. *Id.* at 76. The jury found in Tyner's favor and awarded damages totaling $201,500. *Id.* This court overturned the jury verdict, holding that "the court's no-contact orders throughout the case cut off any legal causation between the State's negligence and Mr. Tyner's separation from his children." *Id.* Our Supreme Court granted review. Relevant here, the Supreme Court held "that a judge's no-contact order will act as superseding intervening cause, precluding liability of the State for negligent investigation, only if all material information has been presented to the court and reasonable minds could not differ as to this question." *Id.* at 88. Because reasonable minds could differ as to whether all material information was presented to the superior court prior to entering its no-contact order, the Supreme Court held

that the superior court's decision issuing the no-contact order was not a superseding cause of Tyner's alleged injury. *Id.* at 88. The Supreme Court therefore reversed this court's prior decision and reinstated the jury's verdict in Tyner's favor. *Id.* at 89.

Lastly, courts in other states have also adopted these legal principles. For example, in *Kiribati Seafood Co., LLC v. Dechert LLP*, the Supreme Judicial Court of Massachusetts stated:

> Where an attorney makes a reasonable and correct argument of law and loses because of judicial error that was not foreseeable, the attorney cannot be found negligent for failing to prevent or mitigate that legal error.
>
> But where the judicial error is foreseeable, such as where a judge or an appellate court has indicated an intention to rule in a manner that the attorney believes to be an error of law, then an attorney has an obligation to take reasonable and prudent steps to prevent or mitigate that error.

478 Mass. 111, 118, 83 N.E.3d 798 (2017). And in *Stanfield v. Neubaum*, the Supreme Court of Texas likewise held:

> When a judicial error intervenes between an attorney's negligence and the plaintiff's injury, the error can constitute a new and independent cause that relieves the attorney of liability. To break the causal connection between an attorney's negligence and the plaintiff's harm, the judicial error must not be reasonably foreseeable. . . . But if the judicial error alleged to have been a new and independent cause is reasonably foreseeable at the time of the defendant's alleged negligence, the error is a concurring cause as opposed to a new and independent, or superseding, cause.

494 S.W.3d 90, 99 (Tex. 2016). The court also observed that "[c]ourts in other jurisdictions have similarly acknowledged that judicial error can constitute a new and independent cause that can relieve an attorney from liability for alleged

malpractice, as long as the attorney did not contribute to the error and the error was not otherwise foreseeable." *Id*. (collecting cases).

B

Applying the foregoing legal principles here, the trial court erred in dismissing Stone's claims on causation grounds. As noted previously, "'only intervening acts which are not reasonably foreseeable are deemed superseding causes.'" *Roemmich*, 21 Wn. App. 2d at 953 (quoting *Frahm*, 193 Wn.2d at 600). Where, as here, a lawyer fails to correct a judgment and sentence that does not accurately reflect the parties' recommended sentence and the sentencing court's stated intent, it is reasonably foreseeable that the court could impose an erroneous sentence. Additionally, the sentencing court's error did not create a different type of harm than otherwise would have resulted from Eppler's tortious conduct, and the court's error was neither extraordinary nor did it result in extraordinary consequences given Eppler's conduct. To the contrary, an erroneous sentence is precisely the sort of harm that results from the risks that made Eppler's conduct tortious.

For similar reasons, the sentencing court's error was not independent of Eppler's tortious conduct, as the court did not make an independent decision to adopt a sentence that varied from the parties' joint recommendation and the court's oral statement at the sentencing hearing. Rather, the sentencing court's error was dependent on Eppler's initial mistake. And lastly, similar to the caseworker's negligent investigation in *Tyner*, Eppler misled the sentencing court by failing to verify the accuracy of the proposed judgment and sentence. Thus, as in *Tyner*,

we cannot conclude that "all material information has been presented to the court and reasonable minds could not differ as to this question." 141 Wn.2d at 88. Whether analyzed under the Second Restatement of Torts, the Third Restatement of Torts, or *Tyner* (which does not cite the relevant restatement provisions), consistent with case law in other jurisdictions, the sentencing court's error is not a superseding cause of Eppler's injury.

Additionally, the superseding cause analysis is not in any event wholly dispositive. Critical here, "'[a]n intervening force is one which actively operates in producing harm to another *after* the actor's negligent act or omission has been committed.'" *State v. Mee Hui Kim*, 134 Wn. App. 27, 42, 139 P.3d 354 (2006) (emphasis added) (quoting RESTATEMENT (SECOND) OF TORTS § 441(1) (AM. LAW INST. 1965)). In addition to alleging that Eppler failed to verify the accuracy of the judgment and sentence *before* it was provided to the sentencing court, Stone's complaint can fairly be read to allege that Eppler failed to do the same *after* the sentencing court entered the judgment and sentence. This court is also "required to deem as true any assertions consistent with the complaint, even if made for the first time on appeal." *Bravo v. Dolsen Companies*, 125 Wn.2d 745, 750, 888 P.2d 147 (1995). In his opening brief, Stone specifically references Eppler's "failure to correct the inaccurate Judgment and Sentence *after* the sentencing hearing." (Emphasis added.) And in his reply brief, Stone likewise states, "even *after* the judge's act Eppler continued to owe a duty to Stone and continued to be in breach of that duty by failing to correct the judgment and sentence." (Emphasis added.) As to this alleged breach, the sentencing court's error is not an intervening act

because it occurred *before*—rather than after—Eppler failed to correct the erroneous judgment and sentence following the sentencing hearing.[2] It therefore cannot be a superseding cause. *See Roemmich*, 21 Wn. App. 2d 952-53 (quoted above).

C

Eppler's contrary arguments lack merit. Eppler claims "only the sentencing court had the authority to impose or correct any sentence, thereby making any errors of Stone's public defense attorney . . . not actionable in tort." This argument fails. In *Tyner*, the superior court similarly had sole authority to order separation of Tyner from his children. But the dispositive issue in *Tyner* was whether the superior court had been provided all material information, not whether it had sole authority to grant or deny relief. More fundamentally, Eppler's argument conflates superseding cause and concurrent causation. Although the sentencing court here had sole authority to impose Stone's erroneous sentence and erred in doing so, it did so based on the inaccurate judgment and sentence that Eppler failed to correct at or after the sentencing hearing. Thus, in addition to the sentencing court's error, Eppler's tortious conduct caused Stone's injury. *See Carroll v. Akebono Brake Corp.*, 22 Wn. App. 2d 845, 883, 514 P.3d 720 (2022) ("'[t]here may, of course, be more than one proximate cause of an injury'") (quoting *Smith v. Acme Paving Co.*, 16 Wn. App. 389, 396, 558 P.2d 811 (1976)); *see also* RESTATEMENT (THIRD) OF

---

[2] Eppler emphasizes in his briefing that he subsequently withdrew as Stone's attorney and, citing *In re Disciplinary Proceeding Against DeRuiz,* 152 Wn.2d 558, 573, 99 P.3d 881 (2004), he argues "an attorney terminates representation by filing a formal notice of withdrawal." To be clear, our discussion in the text above relates to the discrete interval of time *after* the sentencing hearing and *before* Eppler filed his formal notice of withdrawal.

Torts § 34 cmt. a (Am. Law Inst. 2010) ("there are always multiple causes of an outcome").[3] Eppler's contrary argument fails.

Like the trial court below, Eppler relies heavily on *Flynn v. Pierce County*, 16 Wn. App. 2d 721, 482 P.3d 980 (2021) (unpublished in part), to support his superseding cause analysis.[4] That reliance is misplaced. Flynn was convicted of rape and burglary. *Id*. at 723. At sentencing, DOC offered a Presentence Investigation Report (PSI) that included offender scores of 7 and 8. *Id.* The State offered its own PSI that included offender scores of 12 and 13, which, if accepted by the court, would increase Flynn's sentence by several years. *Id*. at 724. Defense counsel did not contest the State's offender scores despite errors in the State's calculations. *Id.* The court accepted the State's offender score calculation and sentenced Flynn to the high end of the standard range. *Id.* Flynn later filed a legal malpractice claim against his defense counsel based on the attorney's failure to object to the incorrect offender scores. *Id*. at 726.

Like Stone's claims in the trial court below, Flynn's legal malpractice claim against his former attorney was dismissed on causation grounds. *Id.* at ¶¶ 26-27. Division Two of this court affirmed. Applying the legal principles set forth in *Tyner*, as described above, Division Two reasoned:

> Because the original sentencing court was presented with the correct calculation of Flynn's offender score by DOC, along with the reasoning supporting that calculation as set forth in the PSI, and it opted to adopt the erroneous calculation proffered by the State,

---

[3] Thus, in *Kiribati Seafood*, the court explained: "Assuming for the sake of argument that the court of appeals truly made an error of law, a reasonable finder of fact would conclude that there were two independent proximate causes of Kiribati's loss: Dechert's negligence . . . and the court's error of law . . . ." 478 Mass. at 120. The same reasoning is applicable here.

[4] Although the portion of *Flynn* addressing proximate cause is unpublished, we may properly cite and discuss unpublished opinions where, as here, doing so is "necessary for a reasoned decision." GR 14.1(c).

> Flynn's erroneous sentence was the product of independent judgment by the court. The original sentencing court's decision, therefore, constituted an intervening and superseding cause of Flynn's harm.

*Id.* at ¶ 36. In other words, the court that sentenced Flynn was not misled and its subsequent error was therefore both independent of the antecedent negligence and not reasonably foreseeable. Here, in contrast, the sentencing court was given only the incorrect judgment and sentence, which Eppler failed to correct both during and after the sentencing hearing. On these alleged and properly hypothesized facts, *Flynn* is inapposite.[5]

### III

The trial court erred in dismissing Stone's legal malpractice and breach of fiduciary duty claims under CR 12(b)(6). We reverse the court's dismissal of these claims and remand the matter for further proceedings consistent with this opinion.

Feldman, J.

WE CONCUR:

Birk, J.

Díaz, J.

---

[5] Eppler's reliance on *Bishop v. Miche*, 137 Wn.2d 518, 973 P.2d 465 (1999), is similarly misplaced. There, Bishop was killed in an automobile accident caused by Miche, who was intoxicated at the time of the accident. Bishop's family thereafter filed a lawsuit against a county probation officer alleging that she should have prevented Miche from driving while on probation because Miche had several driving related convictions. *Id.* at 521-22. The trial court dismissed the claim on summary judgment because a district court judge had refused to revoke probation just prior to the Incident. *Id.* at 523. Because the district court judge made an independent decision after being presented with all material information, its decision severed the causal connection between the probation officer's alleged negligence and Bishop's alleged injury. As noted in the text above, that did not occur here.